IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MADELYN CAREY,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| CHADDS FORD TAVERN,<br>*Defendant* | : | No. 20-4236 |

### MEMORANDUM

PRATTER, J.                                                                                                            NOVEMBER 22, 2021

       Madelyn Carey contends that her employer, Chadds Ford Tavern ("the Tavern"), subjected her to a hostile work environment based on sexual harassment. Ms. Carey asserts claims under Title VII and the Pennsylvania Human Relations Act for discrimination and retaliation. The Tavern moved for summary judgment, arguing that there is no genuine dispute of material fact as to whether Ms. Carey was subjected to sexual harassment and that her employment was terminated for non-retaliatory reasons. Because Ms. Carey has presented evidence to establish a genuine dispute on each point, the Tavern's motion for summary judgment must be denied.

### BACKGROUND

       Ms. Carey was hired as a line cook at Chadds Ford Tavern in April 2018.[1] She alleges that Philip Ferro, the chef and owner of the Tavern, began to sexually harass her in May 2018,

---

[1] The Court notes that the Tavern filed a virtually unsupported statement of facts. Some paragraphs do not have a single record citation. *See, e.g.*, Doc. No. 18 ¶¶ 53–54. That violates this Court's Pretrial and Trial Procedures. Trying to avoid admitting this error, the Tavern argues that "the source of the facts has been previously established or is cited in the paragraphs that immediately follow." Doc. No. 24, at 3. Yet, even if this issue is forgiven as a matter of procedure, the argumentative, unsupported paragraphs fail to establish undisputed facts to aid the Court's analysis of the Tavern's motion for summary judgment. For example, the 118-word run-on sentence in paragraph 53 of the "undisputed" material facts alleges many contradictions in the plaintiff's testimony yet does not provide a single record cite from said testimony. Doc. No. 18 ¶ 53. The Tavern undermines its own motion with such a filing.

subjecting her to unwanted sexual comments despite her asking him to stop. Specifically, Ms. Carey alleges that Mr. Ferro said something inappropriate to her on at least four occasions when they were alone, including asking about her sexual history with her boyfriend, whether Mr. Ferro should have sex with another employee, and at least three times whether Ms. Carey would perform oral sex on Mr. Ferro. Ms. Carey also alleges that, while she was bent over, Mr. Ferro thrust his genitals in Ms. Carey's face and then whispered in her ear. Ms. Carey asserts that each time she asked Mr. Ferro to stop the behavior, he would "simply laugh." Doc. No. 18 Statement of Facts ("SUMF") ¶ 2.

Additionally, Ms. Carey alleges that she was subjected to an on-the-spot drug test on July 2, 2018 by Jillian Maher, the Tavern's General Manager and Mr. Ferro's sister. Ms. Carey alleges that Ms. Maher forced her to show her genitals in the course of taking the test. The drug test was negative.

On July 10, 2018, Ms. Maher terminated Ms. Carey's employment via text message for alleged unprofessionalism and poor work ethic. Ms. Maher sent the text message after a "cold steak" incident in which a customer sent back a steak twice and Ms. Carey, after placing the steak in the microwave, reacted strongly. *Id.* ¶ 55. The parties do not dispute that Ms. Carey left the restaurant angrily, but the Tavern alleges that a fiery Ms. Carey threatened to burn the restaurant down as she stormed out.

Ms. Carey filed a charge of discrimination with the EEOC on December 21, 2018. Another employee, Kathleen Fredericks, similarly filed an EEOC complaint alleging sexual harassment by Mr. Ferro around this time period.

The Tavern filed a motion for summary judgment on both Ms. Carey's sexual harassment and retaliation claims.

2

LEGAL STANDARD

A court can grant a motion for summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw factual inferences in the non-moving party's favor. *See Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 888–89 (E.D. Pa. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment should "be used sparingly in employment discrimination cases," particularly "when . . . intent is at issue." *Id.* at 369; *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

DISCUSSION

The Tavern argues that Ms. Carey has not introduced evidence sufficient to establish severe or pervasive sexual harassment or protected activity for retaliation purposes. The Court addresses each claim in turn.

I.    **Sexual Harassment**

Sexual harassment is a form of sex discrimination prohibited by Title VII and the PHRA. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir.2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive

'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor Sav. Bank*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

### A. Ms. Carey Introduces Evidence of Severe and Pervasive Sexual Harassment

Ms. Carey testified that Mr. Ferro made inappropriate sexual comments to her on at least four occasions, including asking whether Ms. Carey would perform oral sex on him at least three times, and thrust his genitals in her face. The Tavern argues that Ms. Carey's deposition testimony "[s]tanding alone in the face of the contrary evidence cited by the Defendant [is] patently inconsistent and contradictory testimony [that] does not establish genuine issues of material fact." Doc. No. 24, at 2. However, "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990). Even if Ms. Carey did not have corroborating evidence (which she does), a plaintiff's deposition testimony may suffice to create genuine dispute about material issue. Where an issue turns largely on the credibility of the competing testimony, it is inappropriate to decide on a motion for summary judgment. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment . . . .").

The Tavern next argues that, even if Mr. Ferro engaged in the conduct alleged, this conduct would not be severe or pervasive enough to establish a violation of Title VII or the PHRA. Doc. No. 18, at 34. The Tavern maintains that "[n]o jury could reasonably find that the conduct as described by Plaintiff in her deposition testimony met the severe or pervasive standard required to support Plaintiff's claim." Doc. No. 24, at 4–5. Specifically, the Tavern emphasizes that Ms. Carey said she was used to "kitchen talk" and that comments made about other employees did not really bother her to affect the terms or conditions of her employment. *Id.* at 5. However, Ms. Carey maintains that Mr. Ferro's activity toward her became "more serious, more sexual" after her first month of employment. *Id.* at 5 n.4.

The Tavern argues that "Plaintiff was fairly clear that the only comments that concerned her were the times Ferro discussed her in a sexual way (4 times) and when he talked about her blowing him on three occasions." *Id.* at 6 n.8. But this insensitive (at best) argument misses the point: the kinds of workplace conduct that are actionable under Title VII include "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Meritor Sav. Bank*, 477 U.S. at 65 (quoting 29 CFR § 1604.11(a) (1985)). While "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Ms. Carey has introduced evidence of recurring unwanted sexual advances that go far beyond innocuous teasing. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

The notion that the sort of comments recounted in this case were nothing more than "kitchen talk" suggests a "kitchen" from which no one would want their food or drink. According to Ms. Carey's testimony, Mr. Ferro asked Ms. Carey to engage in oral sex with him on at least three different occasions; Mr. Ferro moved his crotch toward her face while she was bent over and

5

then whispered in her ear; Mr. Ferro made sexually inappropriate comments during four of the five times they were alone in the same room together, including asking Ms. Carey about her sexual relations with her boyfriend, who also worked at the Tavern; and Mr. Ferro's sister, Ms. Maher, allegedly "insisted on viewing" Ms. Carey's genitals during a drug test. Doc. No. 24, at 4; CSMF ¶¶ 11–15; 19–20.

Undeterred, the Tavern points to *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 (3d Cir. 2017), to argue that Mr. Ferro's conduct was not so bad. In *Moody*, the plaintiff's custodial foreman made sexual comments, physically touched her, called her into his office where he was seated naked, and continued to make advances until the plaintiff, feeling coerced, engaged in intercourse with him. *Id.* at 211. The Tavern emphasizes that Ms. Carey does not allege that Mr. Ferro was naked when he allegedly put his crotch in her face. Doc. No. 24, at 4 n.3. The Tavern practically suggests that Ms. Carey should be grateful for small favors. The defense argument sets a bar for the severity of sexual harassment far higher than the one the Supreme Court has set. *See Meritor Sav. Bank*, 477 U.S. at 65 (noting that "verbal or physical conduct of a sexual nature" may constitute sexual harassment).

The Tavern also argues that "[t]he manner in which the drug test was performed has no evidentiary value, and was not itself an issue raised as discriminatory in the Plaintiff's Charge and therefore administrative exhaust[ion] has not occurred." Doc. No. 24, at 5–6. However, a plaintiff's claim need only "fall fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (internal quotation marks omitted). The Tavern does not provide any reason why the drug test issue should not be considered fairly contained within the EEOC charge for sexual harassment.

Thus, the Court will reject the Tavern's argument, although the allegation regarding the urine test is not essential to this Court's finding of severity either way.[2]

Additionally, the Tavern argues that the EEOC charge filed by another employee, Kathleen Fredericks, similarly alleging sexual harassment by Mr. Ferro around this time period is not admissible evidence and should not be considered for summary judgment purposes. The Tavern argues that a prior charge against it or Mr. Ferro is "specifically prohibited under F.R.E. 404(a)(1)." Doc. No. 24, at 11–12. However, Rule 404(a)(1) pertains to "[e]vidence of a person's character or character trait." The Third Circuit Court of Appeals has observed that "so-called 'me too' evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible." *Mandel*, 706 F.3d at 167 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)). "Rather, the question of whether evidence of discrimination against other employees by other supervisors is relevant is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* Here, the EEOC charge filed by Ms. Fredericks is relevant because she makes sexual harassment allegations against Mr. Ferro covering roughly the same time period. Ms. Fredericks alleged that Mr. Ferro's comments began in May 2018 and that he would tell her she "needed to work on her body." Doc. No. 21-4, Pl. Ex. B, at 1. Ms. Fredericks similarly alleged that she felt that she had no way to report Mr. Ferro's behavior given his status as the owner; however, she did ultimately approach Mr. Ferro's sister. *Id.* at 2. She alleges that the harassment became *worse* after she reported the behavior to Mr. Ferro's sister, including inappropriate sexual comments and groping.

---

[2] To justify the drug test, the Tavern introduces Ms. Carey's prior drug-related felony conviction and argues that employees were concerned about her "erratic" behavior. Doc. No. 18, at 19. The Tavern does not address the alleged invasive aspect of the urine test, but Ms. Maher testified she did not go in the bathroom stall with Ms. Carey or witness her taking the drug test. Doc. No. 18-7, Maher Tr. at 24:19–25:19. This creates yet another material factual dispute.

7

The Tavern does not make any argument as to why these allegations would be irrelevant or unduly prejudicial aside from noting that her complaint also included age-related comments. Ms. Fredericks's EEOC charge is very closely related to Ms. Carey's allegations about her work environment. The Court finds that this evidence is admissible, albeit subject to a limiting instruction to the jury.

## B. Material Factual Disputes Preclude Summary Judgment

Because material factual disputes abound, the Court will briefly discuss two of particular significance. First, the parties dispute whether Mr. Ferro even denied the conduct alleged by Ms. Carey. When asked about each incident in his deposition, Mr. Ferro repeatedly stated "No, I don't think so." Doc. No. 24, at 9. Ms. Carey points out this isn't a categorical denial. CSMF ¶¶ 25–26. The Tavern argues that "[h]ad Plaintiff chosen to videotape Ferro's deposition his inflection would have been apparent, that he was incredulous that he would even be asked such a question or that anyone would claim such a thing." Doc. No. 24, at 9.[3] In doing so, the Tavern has created a factual dispute that precludes its own summary judgment motion.

Second, the Tavern argues that, because Ms. Carey did not inform anyone in management about the alleged harassment, she could not have "truly felt" the conduct was severe or pervasive. Doc. No. 18, at 23. Ms. Carey counters that she asked Mr. Ferro, who is in management, to stop. She argues that Mr. Ferro owned the business and the general manager, Ms. Maher, was his sister. Ms. Carey testified that she did not complain about Mr. Ferro's behavior to the general manager because, as his sister, she was "very defensive about her brother and that wouldn't have been good." SUMF Resp. ¶ 60(c). Ms. Maher's alleged reaction to Ms. Fredericks's complaint supports

---

[3] In Mr. Ferro's deposition, he also appears to laugh and taunt Ms. Carey's attorney repeatedly. *See e.g.*, Doc. No. 21-3, Ferro Tr. at 34:19–35:19 ("Q. Mr. Ferro, I'm sorry. Is something funny? A. Yes, very funny. Q. What is funny? What is funny? A. This whole thing. . . . That this is all a big bunch of bulls\*\*t. Okay.").

8

this assessment. The Tavern also—incredibly—argues that Ms. Carey should have informed Mr. Ferro's ex-wife (then in the process of separating from Mr. Ferro), as the other managerial employee. Doc. No. 18, at 25 ("With respect to her excuse for not reporting or complaining to Ferro's wife, plaintiff offers no reason whatsoever and simply dismissed that question why she did not say anything."). The Tavern's argument that Ms. Carey's allegations are not credible because she did not report them to Mr. Ferro's sister or wife at most creates a dispute of fact. Therefore, material factual disputes preclude summary judgment on the discrimination claim based on sexual harassment.

## II. Retaliation

Ms. Carey also asserts a retaliation claim based on the termination of her employment. She states that she was "terminated after she opposed Mr. Ferro's sexual harassment and was terminated by the sister of Mr. Ferro." Doc. No. 21-2, at 13–14. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (internal quotation marks omitted).

### A. Protected Activity

First, the Tavern argues that Ms. Carey did not engage in protected activity because she did not report the alleged harassment to anyone. Doc. No. 18, at 24. The Tavern argues that the following is a statement of undisputed fact:

> Plaintiff admits she never reported to any of Defendant's management the alleged misconduct of Phillip Ferro nor did she seek to obtain relief [from] his conduct through any alternative means and it cannot credibly be argued that the reasons given for the termination of her employment were pretext to cover the alleged

9

discriminatory reason that the termination of her employment was in retaliation for reporting or complaining about the conduct of Philip Ferro, as she did neither.

SUMF ¶ 54.

The Tavern, however, provides no citation for this lengthy statement of "undisputed fact." Ms. Carey did in fact testify that she pursued "alternative means" "to obtain relief [from] his conduct" including asking Mr. Ferro, as an owner of the business, to stop, and talking to others at her workplace about the issue. Doc. No. 18-3, Carey Tr. at 64:7–21 ("Q. Did you report it to anyone? A. Did I report it, no. Did I talk to people, yes."); *id.* at 54:14–55:1 (asserting that she stopped her boyfriend from confronting Mr. Ferro after telling him about Mr. Ferro's conduct).

"Title VII's anti-retaliation provisions protect employees who participate in Title VII's statutory processes or who otherwise oppose employment practices made illegal by Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 134 (3d Cir. 2006). Protected activity includes "formal EEOC proceedings as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges." *Id.* at 135. The Tavern argues that "Plaintiff never sought to determine whether Ferro was anything more than exactly what he was, a minority partner in a company that owned and operated Chadds Ford Tavern and the Chef in its kitchen, and had any way of interfering with her report and complaint to the GM," who was his sister. Doc. No. 18, at 24. However, the general manager (Ms. Maher) herself testified that she understood her brother Mr. Ferro to be the owner. Doc. No. 18-17, Maher Tr. at 10:24–11:2.

At the summary judgment phase, all inferences are construed in favor of the non-movant. Here, that is Ms. Carey. The Tavern fails to point to any evidence establishing that Ms. Maher, as the General Manager, was not aware of Ms. Carey's complaints about the sexual harassment to

10

her brother and coworkers when she conducted the allegedly invasive urine test and then terminated Ms. Carey's employment. Ms. Carey testified that Mr. Ferro and Ms. Maher ran an intimate workplace involving about five cooks per shift in a small kitchen. Doc. No. 18-3, Carey Tr. at 25:20–26:15. Ms. Carey alleges that Mr. Ferro and Ms. Maher shared a lot of information within the small workplace, including allegations that "everybody was talking about" a conflict with Ms. Maher resulting from another waitress's allegations against Mr. Ferro and that Mr. Ferro "passed around one employee's whole []rap sheet" to everyone in the kitchen. *Id.* at 48:15–19, 105:12–13. Based on Ms. Carey's testimony, the Court finds that it is reasonable to infer that Ms. Maher knew about Ms. Carey's sexual harassment allegations against her brother, Mr. Ferro, at the time she terminated Ms. Carey's employment.

## B. Causation

The Tavern also argues that Ms. Carey's resistance to sexual harassment did not cause the termination of her employment. The Third Circuit "case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265 265, 288 (3d Cir. 2001). Evidence of either factor may establish a causal connection. *Id.* Ms. Carey testified that the harassment was ongoing and that Ms. Maher was both the person who conducted the allegedly invasive urine test on July 2, 2018 and who terminated Ms. Carey's employment on July 10, 2018. SUMF ¶¶ 3, 5; Doc. No. 18-3, Carey Tr. at 74:15–77:7.

The Tavern asserts that the termination of Ms. Carey's employment was based on two violations of the Tavern's attendance policies, as well as her "very hostile, profanity laced blow up" in response to the cold steak issue. Doc. No. 18, at 19. Where the employer offers a non-discriminatory justification for the termination decision, "the non-moving plaintiff must

11

demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal question marks and citation omitted). "When the defendant's intent has been called into question, the matter is within the sole province of the factfinder." *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). There are several factual disputes about the cause for the termination of Ms. Carey's employment that preclude summary judgment.

First, the parties dispute whether the write-ups for the two attendance issues were made at the time of each incident or "weeks" afterwards. CSMF ¶ 17. Ms. Carey argues that the attendance write-ups are pretext, maintaining that she was written up for being late "all at once, weeks after the incident had occurred, as if it was a plan to terminate her." SUMF Resp. ¶ 44(b).[4] Ms. Carey disputes the date on the write-ups, testifying that Ms. Maher added the dates after Ms. Carey signed the paperwork. Doc. No. 18-3, Carey Tr. at 71:15–72:3.

Second, Ms. Carey argues that her conduct surrounding the cold steak issue could not be the real reason for her termination because it was not outside the scope of acceptable conduct in her workplace. Doc. No. 21-2, at 14. Ms. Carey testified that Mr. Ferro himself had engaged in "a lot of worse" cursing and that she did not directly interact with the customer. Doc. No. 18-3, Carey Tr. at 83:11–16; 84:16–17. The Tavern does not dispute that others engaged in similar

---

[4] The parties also dispute whether Ms. Carey threatened to burn the restaurant down as she departed; the Tavern alleges that she called Ms. Maher two expletives (which the Court need not recount from the parties' briefing) and then "depending upon the version of each witness, threatening to burn the restaurant down as she stormed out of the building and left for the day without finishing her shift." SUMF ¶ 55. Ms. Carey disputes this. SUMF Resp. ¶ 55(e).

conduct, but there is a dispute regarding whether Ms. Carey's conduct on the day of the termination, combined with the write-ups, was sufficient to warrant the termination decision.

Third, the Tavern argues that "Plaintiff seeks to intentionally misstate the record regarding the number of days that had passed after her drug test until the incident for which she was terminated," without offering a different number of days. Doc. No. 24, at 8. To the extent the Tavern challenges the short time span alleged, this is—at most, or at least—another dispute of fact.

Fourth, Ms. Carey argues that the text message Ms. Maher sent her to inform her that her employment was terminated provided contradictory reasons that call Ms. Maher's intent into question. Ms. Carey testified that Ms. Maher "kind of contradicted herself because she said I was a great worker and she wishes me well, but then she said I was very unprofessional and talked about my work ethic . . . ." Doc. No. 18-3, Carey Tr. at 95:13–17. The Tavern relies primarily on the testimony of Kate Hussey, who is the new general manager and current girlfriend of Mr. Ferro, as a witness from the day that Ms. Maher terminated Ms. Carey's employment. Doc. No. 18-6, Def. Ex. F, Hussey Tr. at 9:7–14; 43:21–44:12. Ms. Hussey testified that she saw the text message that Ms. Maher sent to Ms. Carey and seems to dispute Ms. Carey's account, testifying that it said "something along the lines of your employment has been terminated here after so many issues." *Id.* at 19:12–14. The Court notes that testimony from the new general manager, with whom Mr. Ferro is romantically involved, will be subject to the jury's credibility assessment and does not necessarily bolster the Tavern's position on either of the claims alleged. Regardless, issues of credibility are for the jury. *Anderson*, 477 U.S. at 255.

## Conclusion

For the foregoing reasons, the Court denies Chadds Ford Tavern's motion for summary judgment. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE